FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 10, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AARON K.,

                    Plaintiff,

          v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

No.    4:19-cv-05044-SMJ

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING THE
COMMISSIONER'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiff Aaron K. appeals the Administrative Law Judge's (ALJ) denial of his application for Supplemental Security Income (SSI) benefits. He alleges that the ALJ (1) improperly evaluated the evidence at step three of the sequential evaluation process in determining that Plaintiff's symptoms did not meet the criteria for epilepsy, (2) improperly evaluated the opinions of a treating nurse practitioner, (3) failed to consider the testimony of a lay witness regarding the nature and frequency of Plaintiff's seizures, (4) improperly discounted Plaintiff's symptom testimony, and (5) as a result of the preceding errors, conducted a flawed analysis at steps four and five. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY
JUDGMENT - 1

1    Before the Court, without oral argument, are the parties' cross-motions for

2    summary judgment, ECF Nos. 11, 13. Upon reviewing the administrative record,

3    the parties' briefs, and the relevant authority, the Court is fully informed. For the

4    reasons set forth below, the Court agrees with Plaintiff that (1) the ALJ's analysis

5    at step three was inadequate, (2) the ALJ's reasons for rejecting the nurse

6    practitioner's opinions were insufficient, and (3) the ALJ's failure to consider the

7    lay witness testimony regarding his seizures was not harmless. The Court reserves

8    ruling on Plaintiff's claim that the ALJ failed to articulate a defensible basis for

9    rejecting Plaintiff's symptom testimony but remands with specific direction to

10   guide the analysis. Although these errors invalidated the ALJ's conclusion that

11   Plaintiff did not qualify for benefits, Plaintiff's entitlement is not clear from the face

12   of the record. Accordingly, the Court grants Plaintiff's motion for summary

13   judgment, denies the Commissioner's motion for summary judgment, and remands

14   for further proceedings.

## BACKGROUND[1]

16   Plaintiff applied for benefits on April 28, 2015. AR 160–63.[2] The

17   Commissioner denied Plaintiff's application on August 17, 2015, *see* AR 88–90,

---

[1] The facts, thoroughly stated in the record and the parties' briefs, are only briefly summarized here.
[2] References to the administrative record (AR), ECF No. 8, are to the provided page numbers to avoid confusion.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT - 2

and denied it again on reconsideration, *see* AR 96–102. At Plaintiff's request, a hearing was held before ALJ Jesse Shumway. AR 29–65. The ALJ denied Plaintiff benefits on March 14, 2018. AR 10–28. The Appeals Council denied Plaintiff's request for review on January 23, 2019. AR 1–6. Plaintiff then appealed to this Court under 42 U.S.C. § 405(g). ECF No. 1.

## DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT - 3

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity, or RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show (1) the claimant can perform other

substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## ALJ FINDINGS

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity. AR 15.

At step two, the ALJ found that Plaintiff had two medically determinable severe impairments: lumbar degenerative disc disease and unspecified mixed seizure disorder. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR 18.

At step four, the ALJ found that Plaintiff had an RFC sufficient to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: "he could not climb ladders, ropes, or scaffolds, and could only occasionally perform all other postural activities; he could not have concentrated exposure to extreme

heat; he could have no exposure to vibration or hazards (unprotected heights or moving mechanical parts); and he could not operate a motor vehicle." AR 19.

In reaching this determination, the ALJ gave great weight to the opinions of John Morse, M.D. and Anitha Raghunath, M.D., and state medical consultant James Irwin, M.D. AR 20–21. The ALJ gave little weight to the opinion of Deborah Rogers, ARNP. *Id*.

At step five, the ALJ found Plaintiff could perform past relevant work as a fast food worker. *Id*. In the alternative, the ALJ found Plaintiff could perform other jobs existing in the national economy. AR 23.

## STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record, considered as a whole, to support the ALJ's decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla but may be less than a preponderance. *Id*. at 1110–11 (citation omitted). If the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by

inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court will not reverse an ALJ's decision if the errors committed by the ALJ were harmless. *Molina*, 674 F.3d at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## ANALYSIS

### A. The ALJ erred in assessing if Plaintiff met or equaled the epilepsy listing

Plaintiff first alleges the ALJ erred at step three of the sequential evaluation process when he found Plaintiff's impairments did not meet or medically equal listing 11.02(B)—*Epilepsy*. ECF No. 11 at 12–14. Plaintiff claims the ALJ erred in basing this conclusion on the testimony of Dr. Morse and in disregarding evidence of the frequency with which Plaintiff experienced seizures. *Id.* The Commissioner argues the ALJ did not err at step three because Plaintiff failed to produce sufficient evidence to establish epilepsy under 11.02(B). ECF No. 13 at 2–8.

The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 404.1525. If a claimant meets the listed criteria for disability, he or she will be found to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

"To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1525(d). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

The claimant bears the burden of establishing the impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). However, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)).

Plaintiff contends the ALJ erred in assessing whether his symptoms met or equaled listing 11.02(B), establishing presumptive disability on the basis of

"dyscognitive seizures"[3] that have occurred "at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.02(B). The ALJ concluded Plaintiff had failed to establish disability under listing 11.02(B) because an EEG[4] and MRI[5] conducted in 2012 were negative for seizure activity, relying on the testimony of Dr. Morse that this would be "quite unusual for someone with significant epilepsy." AR 18. The ALJ also noted that while several of Plaintiff's medical providers noted a diagnosis of epilepsy, Dr. Raghunath, Plaintiff's treating neurologist, had not expressly diagnosed epilepsy. *Id.* The ALJ also credited Dr. Morse's testimony that there was no clinical evidence of seizures occurring weekly for a three-month period, as required by the listing. AR 19.

The Court finds the ALJ erred in assessing whether Plaintiff's symptoms satisfied the criteria of listing 11.02(B). To begin, the Court finds the ALJ erred in assigning "great weight" to the opinions of Dr. Morse in concluding Plaintiff did not meet or equal the criteria. As Plaintiff correctly observes, Dr. Morse was not a

---

[3] The regulations provide "Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.00(H)(1)(b).
[4] Electroencephalography
[5] Magnetic resonance imaging

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT - 9

neurologist, but rather an expert in internal medicine. *See* AR 17 (ALJ describing Dr. Morse as "a medical expert in internal medicine."). Indeed, during his testimony, Dr. Morse testified "I'm not a – I'm not a neurologist, I'm being very honest with you. I have difficulty identifying petit mal seizures because it's such a gray symptom complex that it could be due to so many other things." AR 41. In light of this self-admitted weakness in identifying the impairment Plaintiff is alleged to suffer from, the Court finds the ALJ erred in assigning what appears to be dispositive weight to Dr. Morse's opinion.

This error was compounded by the ALJ's overreliance on test results from an MRI and EEG, both conducted in 2012, which were apparently negative for seizure activity. *See* AR 18. Specifically, the ALJ concluded "the [Plaintiff]'s EEG and MRI were negative, and that would be quite unusual for someone with significant epilepsy." *Id.* The ALJ wrote Dr. Morse merely "pointed out" the significance of the negative EEG and MRI results, but if the ALJ reached this conclusion from an independent source of medical expertise, that is not clear from the record. *Id.* During the hearing, immediately after testifying that he lacked specific expertise in the field of neurology and struggled to diagnose petit mal seizures, Dr. Morse testified "I think the negative EEG is a very important finding." AR 41.

Plaintiff points to credible evidence that this reliance was misplaced. Although the ALJ appears to have given significant weight to the negative EEG

finding from years before Plaintiff applied for benefits, mentioning it first in his analysis, the Commission does not require EEG findings to satisfy the criteria for a neurological listing and will not pay to administer such an examination. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.00(H)(5). Moreover, Plaintiff cites the medical literature providing that "[t]he EEG can be repeatedly normal in someone with epilepsy . . . ." Carl E. Stafstrom and Lionel Carmant, *Seizures and Epilepsy: An Overview for Neuroscientists*, Cold Springs Harbor Perspectives in Medicine 4 (June 2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4448698/ (last visited March 7, 2020).[6] That same publication advises "[t]he diagnosis of epilepsy is based on clinical information and the EEG should be regarded as confirmatory, not diagnostic" as "[t]he standard teaching is 'treat the patient, not the EEG.'" *Id.*

It is not clear from the ALJ's decision whether he assigned disproportionate weight to the negative EEG or Dr. Morse's potentially incorrect interpretation of its significance. That the ALJ identified these findings first in concluding Plaintiff had

---

[6] Though judicial review of the ALJ's decision is generally limited to the administrative record, in certain cases, including where the Court is tasked with evaluating "complex medical questions," the Court may consider extrinsic evidence. *See Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1027 (4th Cir. 1993)). The Court does not attach dispositive weight to the medical literature on which Plaintiff relies; that is, the Court does not decide Plaintiff *has* met the listing criteria. Rather, the Court considers this extrinsic evidence only insofar as it suggests the ALJ assigned disproportionate weight to the negative EEG result.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT - 11

not satisfied the listing criteria gives rise to the inference the ALJ gave the EEG too much weight. *See* AR 18. And if the ALJ was aware of the limited diagnostic value of a negative EEG in assessing epilepsy, he did not say so on the record. Because this error could have resulted in the ALJ's incorrectly denying Plaintiff's application for benefits based on an erroneous or incomplete evaluation of the medical evidence, *see Lewis*, 236 F.3d at 512, the Court cannot find the error harmless. *Molina*, 674 F.3d at 1111.

The ALJ also noted that in June 2015, Dr. Raghunath diagnosed Plaintiff with "[c]omplex partial seizures with secondary general seizures" and did not expressly identify his condition as "epilepsy." AR 302. But while Dr. Raghunath's chart notes distinguished between Plaintiff's history of "grand mal" seizures and "petit mal" seizures, she wrote the purpose of Plaintiff's visit was to "establish care for epilepsy" and described Plaintiff as having a "[history of] complex partial epilepsy with secondary convulsive epilepsy." *Id.* And in chart notes during Plaintiff's follow-up visits, Dr. Raghunath generally described Plaintiff's condition as "epilepsy." *See, e.g.*, AR 339 (noting on April 5, 2016 that "Aaron K[.] is . . . here for a follow up of epilepsy."); AR 355 (noting same on December 20, 2016). The listings themselves distinguish between various types of "epilepsy." *See generally* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.02. The Commissioner points to no occasion on which Dr. Raghunath attributed Plaintiff's seizures to another disorder

or ruled out epilepsy. Accordingly, the Court finds the ALJ erred in attaching particular significance to Dr. Raghunath's specific choice of language in describing Plaintiff's seizure disorder.

Finally, the ALJ concluded that "with no clinical observations or other evidence of any petit mal seizures, it is not established that [Plaintiff] has at least one per week, as required by the listing." AR 18. Plaintiff appears to concede that there was no clinical *observation* of seizure activity in the record before the ALJ, but points to consistent reports of frequent seizures throughout the record. *See* ECF No. 11 at 14 (citing AR 339, 350, 352, 356, 394 & 407). The ALJ appeared to conclude that the absence of clinical observations of seizures was dispositive, and if so, that conclusion was error. *See* AR 18. Given the transient nature of seizures, and the intermittent frequency with which Plaintiff reported suffering them, it is hardly surprising that one never occurred during the time Plaintiff happened to be with one of his doctors.

The Commissioner is, of course, correct that a claimant's own symptom testimony or testimony of a lay witness is insufficient to make up for "a missing or deficient sign or laboratory finding to raise the severity of [an] impairment(s) to that of a listed impairment." ECF No. 13 at 4 (citing 20 C.F.R. § 404.1529(d)(3)). If the medical record was replete with negative diagnostic evaluations ruling out epilepsy or long-term observations of Plaintiff without a single seizure, the absence of

clinical evidence might have been sufficient to establish that Plaintiff's seizure frequency did not meet the listing's criteria. *See* 20 C.F.R. § 404.1529(d)(3). But the ALJ did not reach that conclusion, and the Court's review of the record indicates he would not have been able to do so. Accordingly, the Court finds the ALJ erred by assigning disproportionate weight to the absence of clinical observations of seizure activity.

This error, too, might have been harmless had the record simply contained *no* evidence of seizure activity, or far too little to satisfy the listing criteria. However, the record before the ALJ contained consistent reports of seizures frequent enough to render Plaintiff presumptively disabled. *See* AR 339. To be sure, many of these reports came from Plaintiff, but that is hardly surprising given the relative lack of outward signs resulting from a dyscognitive seizure. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 11.00(H)(1)(b). While the ALJ found Plaintiff's testimony regarding the frequency of his seizures inconsistent and therefore assigned reduced weight to it, as explained below, the Court remands with direction that the ALJ reconsider that conclusion. Accordingly, the Court cannot find the ALJ's error in assigning disproportionate weight to the absence of clinical findings harmless. To the contrary, the record suggests this error may have resulted in the ALJ improperly denying Plaintiff's request for benefits.

**B.      The ALJ erred in discounting nurse practitioner Rogers's opinions**

Plaintiff also contends the ALJ erred in discounting the opinions of Deborah Rogers, ARNP. *See* ECF No. 11 at 10–11. Rogers opined that Plaintiff was disabled and, among other things, would be required to lie down during the day and would miss four or more days of work per month. AR 410–11. The ALJ assigned Rogers's opinions "little weight" because they were memorialized in a check-box format "with little explanation for her extreme limitations," were inconsistent with her own treating notes reflecting improvement in Plaintiff's condition with sobriety, and were inconsistent with the opinions of Drs. Morse, Irwin, and Raghunath. AR 21.

An ALJ may consider "other source" testimony from medical sources such as nurse practitioners, physicians' assistants, and counselors. 20 C.F.R. § 404.1513(d)(1).[7] Testimony from "other sources" regarding a claimant's symptoms or how an impairment affects his or her ability to work is competent evidence and cannot be disregarded without comment. *See Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) (discussing friend and family lay witnesses, also listed as other sources under 20 C.F.R. § 404.1513(d)). If an ALJ chooses to discount testimony of such a witness, the ALJ must provide "reasons that are germane to each witness" and may not simply categorically discredit the testimony.

---

[7] The Court applies the regulations as written at the time Plaintiff's application for benefits was filed.

*Id.* at 919.

Further, the ALJ may reject the opinions of a provider where those conclusions are memorialized only in "check-off reports that [do] not contain any explanation of the bases" for the provider's assessments. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). However, a conclusory opinion that is "based on significant experience" with a claimant and is "supported by numerous records" is entitled to greater weight than an otherwise unsupported and unexplained check-box form. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

The ALJ rejected nurse practitioner Rogers's opinion in a single terse paragraph, describing her opinion as "speculative" and generally "inconsistent" with her own treatment notes and the opinions of the medical doctors in the record. AR 21. To begin, the ALJ erred in failing to explain how Rogers's opinion was speculative to a greater degree than any other predictive medical estimate regarding the effect of an individual's impairment. *See Dodrill*, 13 F.3d at 919 (requiring germane reasons to reject opinions of other source). Second, having reviewed the record, the Court cannot agree with the ALJ that the format in which Rogers's conclusions were memorialized was a germane reason to reject them. *See* AR 410–11. Though Rogers's most significant conclusions—for example, that Plaintiff could be expected to miss four or more days of work per month—were communicated by checking one of several options on the form the ALJ cited,

Rogers used nearly every available line on the two-page form to explain those opinions. *See id.* Thus, to the extent Rogers's opinions were not explained at length, it would seem to be the fault of the form she used, which she was asked to complete by Plaintiff's attorney. *See* AR 411. And in light of Nurse Rogers's fairly extensive treating relationship with Plaintiff, the Court cannot find that her opinions lacked a substantial basis in the medical record. *See generally* AR 331–409; *see also Crane*, 76 F.3d at 253; *Garrison*, 759 F.3d at 1013.

The ALJ also described Rogers's opinions as "inconsistent" with her own chart notes demonstrating that Plaintiff's condition improved with sobriety. AR 21. But the ALJ did not identify which portions of Rogers's disability opinions were inconsistent with the fact that Plaintiff fared better when he was not drinking, nor can the Court infer to which of those opinions the ALJ might have been referring. The ALJ also found Rogers's opinions at odds with those of Drs. Morse, Irwin, and Raghunath. AR 21. In this regard the ALJ gave virtually no explanation, failing to identify a single one of Rogers's opinions that conflicted with those of the medical doctors. *Id.* The Court will not supply this explanation on the ALJ's behalf. In short, the ALJ's perfunctory rejection of Rogers's opinion—which was premised on a substantial treating relationship with Plaintiff—was error requiring remand. *Dodrill*, 13 F.3d at 918–19.

**C. The ALJ's failure to address Ms. Montgomery's seizure questionnaire was not harmless**

Plaintiff also assigns error to the ALJ's failure to address the significance of a "seizure questionnaire" completed by Plaintiff's girlfriend describing the nature and frequency of Plaintiff's seizures. *See* AR 243–47. The Commissioner appears to concede the ALJ did not engage with the seizure questionnaire or assess its importance, yet contends the error was harmless. *See* ECF No. 13 at 15–16.

The Commissioner contends the ALJ properly evaluated the conclusions of the medical providers, most notably Dr. Morse, and in finding Plaintiff's seizures did not satisfy the listing criteria for epilepsy, essentially rendered Ms. Montgomery's observations of Plaintiff's seizures moot. *Id.* at 15. But as set out above, the ALJ's evaluation of Dr. Morse's and nurse practitioner Rogers's opinions with regard to Plaintiff's epilepsy was undermined by harmful errors. Particularly as to the frequency with which Plaintiff suffered seizures, Ms. Montgomery's observations could have provided a substantial basis in evidence to find Plaintiff met the listing criteria. The Court cannot therefore agree that the ALJ's failure to address the seizure questionnaire was harmless.

The Commissioner also contends that because the ALJ rejected Plaintiff's descriptions of his own symptom testimony, which were similar to Ms. Montgomery's, the ALJ's justification for discounting Plaintiff's testimony applied

to Ms. Montgomery's observations. *Id.* at 16 (citing *Valentine*, 574 F.3d at 694).

Even if the Court were to determine that the ALJ did not err in assessing Plaintiff's symptom testimony, the Court concludes the seizure questionnaire could have contributed to the ALJ's decision as to whether Plaintiff satisfied the epilepsy criteria, and the Court cannot find the failure to evaluate this evidence harmless.

## D.    The Court reserves ruling on whether the ALJ erred in evaluating Plaintiff's symptom testimony

Next, Plaintiff assigns error to the ALJ's decision to discount Plaintiff's own subjective symptom testimony. ECF No. 11 at 15–19. The Commissioner contends the ALJ properly discounted Plaintiff's symptom testimony because it was inconsistent and incompatible with Plaintiff's self-reported level of activity. ECF No. 15 at 10–15.

Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of his symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). The ALJ's findings must be sufficient "to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In evaluating the claimant's credibility, the "ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct,

daily activities, and work record, among other factors." *Bray*, 554 F.3d at 1227. The Court may not second guess the ALJ's credibility findings that are supported by substantial evidence. *Tommasetti*, 533 F.3d at 1039.

The ALJ rejected Plaintiff's symptom testimony for several reasons. First, the ALJ noted inconsistency between Plaintiff's testimony regarding the frequency of his seizures and his statements to providers. *See* AR 20. The ALJ highlighted incongruity between Plaintiff's statement that he had never gone a week without a seizure and his February 2017 statement to Dr. Raghunath that he had experienced no seizures in six months and no severe seizures in a year. AR 626. The ALJ also identified inconsistencies between Plaintiff's statement that he generally had five seizures per week and his statements in June 2015 that he had gone a month without a seizure as well as in 2016 when he reported the frequency decreasing to three per month for the preceding two months. AR 20. (citing AR 302, AR 356). Given the other deficiencies identified in the ALJ's decision requiring remand, the Court need not determine at this time whether these ostensibly scattered inconsistencies constituted a clear and convincing basis to reject Plaintiff's testimony regarding how frequently he suffered seizures. On remand, the ALJ shall reevaluate this conclusion, particularly in light of the otherwise apparently consistent reports of between two and twelve seizures per week. *See, e.g.*, AR 339, 407.

Second, the ALJ also observed that Plaintiff's symptom testimony was inconsistent with his "reasonably high-functioning activities of daily living." AR 20. Specifically, the ALJ thought Plaintiff's testimony that he "basically just sits and watches TV or naps" was incompatible with his self-assessed "function report" that he lives alone, cares for his pets, makes simple meals, does laundry, does dishes, vacuums, shops, and manages his financial accounts. *Id.* (citing AR 221–32). The ALJ appears to have taken literally Plaintiff's testimony during the hearing that he does not "do anything" or "go out" because he fears he may experience a dyscognitive seizure, and therefore sits on his couch and watches television. AR 44. Having reviewed the transcript, the Court finds the ALJ put too much stock in this apparently off-hand remark; it is not clear that Plaintiff meant this statement literally, and its inconsistency with Plaintiff's statements to doctors that he engages in fairly minimal requirements of daily living is not a clear and convincing reason to discount his testimony. *Burrell*, 775 F.3d at 1137.

More importantly, that Plaintiff engages in these basic daily living activities is not incompatible with his claimed disability. As the Ninth Circuit has observed, ALJs are often too quick to conclude that a claimant's ability to sustain the minimal requirements of daily living precludes the claimant from being unable to obtain gainful employment. *Garrison*, 759 F.3d at 1016 ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment

will often be consistent with doing more than merely resting in bed all day."); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (citations omitted)).

The ALJ appears to have concluded that because Plaintiff was capable of more than sitting on the couch and watching television, he was able to perform his past work as a service worker. AR 20. "The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). From the ALJ's decision, it is unclear whether he would have been satisfied with anything less.[8] On remand, such a conclusion,

---

[8] The record also provides an equally unacceptable alternative for the ALJ's rejection of Plaintiff's symptom testimony. In an apparently offhand remark after articulating the two bases to reject Plaintiff's symptom testimony the Court now rejects, the ALJ remarked Plaintiff's "weak, inconsistent work history before the alleged onset date of disability also suggests the explanation for his ongoing unemployment is likely something other than his current medical conditions." AR 20.

The ALJ need not articulate clear and convincing reasons for rejecting a Plaintiff's symptom testimony if he finds evidence of "malingering," defined as the

articulated as it was by the ALJ, will not serve as a "specific, clear and convincing reason[]" for rejecting Plaintiff's symptom testimony. *Burrell*, 775 F.3d at 1137.

**E.      The Court need not evaluate the ALJ's steps four and five analyses**

Given the deficiencies in the ALJ's decision identified above, the Court need not evaluate the ALJ's conclusions at steps four and five, which will necessarily depend on the outcome of the preceding steps.

**F.      Remand, rather than an award of benefits, is appropriate**

In light of the errors identified above, further proceedings are clearly necessary. Though there is certainly substantial evidence to support Plaintiff's entitlement to benefits, that conclusion is not "clear from the record." *Garrison*, 759 F.3d at 1019. Accordingly, the Court remands this matter to the ALJ for further proceedings consistent with this Order, rather than simply awarding benefits.

---

"intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as . . . avoiding work [or] obtaining financial compensation . . . ." *United States v. Wilborn*, 336 F.3d 558, 559 (7th Cir. 2003) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 739 (rev. 4th ed. 2000)).

The ALJ found Plaintiff's impairments could reasonably be expected to produce the symptoms complained of. AR 20. Interpreted generously, therefore, the ALJ's comment regarding a potential alternative reason for Plaintiff's lack of gainful employment—his "weak, inconsistent work history"—was a noncommittal way of saying he suspected Plaintiff of malingering. The ALJ had the authority to formally make such a finding but chose not to. Accordingly, the Court disregards this remark entirely.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT - 23

**CONCLUSION**

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2.      The Commissioner's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

3.      The Clerk's Office shall **ENTER JUDGMENT** in favor of **PLAINTIFF** and thereafter **CLOSE** the file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 10th day of March 2020.

_____

SALVADOR MENDOZA, JR.
United States District Judge